IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA VOTER ALLIANCE and JOHN WOOD, | : <br> : <br> : |
| Plaintiffs, | : <br> : |
| | :    CIVIL ACTION NO. <br> :    1:20-CV-4198-LMM |
| v. | : <br> : <br> : |
| FULTON COUNTY, | : <br> : <br> : |
| Defendant. | : |

# ORDER

This case comes before the Court on Plaintiffs' Motion for Temporary Restraining Order [3]. After due consideration, and with the benefit of a hearing, the Court enters the following Order:

**I.   BACKGROUND**

Plaintiffs Georgia Voter Alliance and John Wood, a voting rights group and an individual Georgia voter,[1] have sued Fulton County to prevent it from accepting funds from the Center for Tech and Civic Life ("CTCL"). Dkt. No. [1]. Plaintiffs allege that CTCL provides grant money to counties and city governments for election administration and that CTCL favors jurisdictions "with

---

[1] Plaintiffs only allege that Mr. Wood is "an eligible Georgia voter." Dkt. No. [1] ¶ 5. They do not allege Mr. Wood's county of residence, including whether he resides in Fulton County.

progressive voter patterns." Id. ¶ 20. Plaintiffs allege that CTCL has awarded Defendant Fulton County a $6,000,000 COVID-19 Response Grant because it has a history of progressive voting. Plaintiffs argue that they are injured by the Fulton County grant because they "do not want progressive candidates to win in the November 3 elections." Id.

CTCL, which is not a party to this lawsuit, is a non-partisan non-profit headquartered in Chicago, Illinois. Its stated purpose is to "provide funding to U.S. local election offices to help ensure they have the critical resources they need to safely serve every voter in 2020." Dkt. No. [1-1] at 2. Since the beginning of the COVID-19 pandemic, CTCL has issued grants to local election jurisdictions to ensure the jurisdictions "have the staffing, training, and equipment necessary[,] so this November every eligible voter can participate in a safe and timely way and have their vote counted." Id. Any jurisdiction is eligible to apply that is "responsible for administering election activities covered by the grant." Id. at 5.

Plaintiffs allege that CTCL issues grant money to cover the following expenses:

**Ensure Safe, Efficient Election Day Administration**

- Maintain open in-person polling places on Election Day
- Procure Personal Protective Equipment (PPE) and personal disinfectant to protect election officials and voters from COVID-19
- Support and expand drive-thru voting, including purchase of additional signage, tents, traffic control, walkie-talkies, and safety measures

**Expand Voter Education & Outreach Efforts**

- Publish reminders for voters to verify and update their address or other voter registration information, prior to the election
- Educate voters on safe voting policies and procedures

**Launch Poll Worker Recruitment, Training & Safety Efforts**

- Recruit and hire a sufficient number of poll workers and inspectors to ensure polling places are properly staffed, utilizing hazard pay where required
- Provide voting facilities with funds to compensate for increased site cleaning and sanitation costs
- Deliver updated training for current and new poll workers administering elections in the midst of a pandemic

**Support Early In-Person Voting and Vote by Mail**

- Expand or maintain the number of in-person early voting sites
- Deploy additional staff and/or technology improvements to expedite and improve mail ballot processing

Dkt. No. [1] ¶ 44.

Once CTCL issues a grant to a local government, the government has discretion to decide how those funds will be spent. Fulton County has spent its grant funds on "new signage, . . . and [] PPE supplies, which are needed to ensure the safety of the polling places, and to offset increased staff expense." Dkt. No. [9] at 6 (citing Dkt. No. [9-6], Richard Barron Decl.). These expenditures will help to address challenges posed by the COVID-19 pandemic coupled with higher-than-normal voter turnout. Dkt. No. [9-6] ¶ 7. Fulton County asserts that, "if [it] is denied the ability to use the CTCL grant fund, election services in Fulton County will be underfunded . . . ." Id. ¶ 12.

By accepting money for these purposes, Plaintiffs claim that Fulton County is participating in a "constitutionally impermissible public-private partnership." Dkt. No. [1] ¶ 98. Plaintiffs argue that this partnership is preempted by federal law, including the Article I Elections Clause and Article VI Supremacy Clause of the United States Constitution; the Help America Vote Act ("HAVA"); the National Voters Registration Act ("NVRA"); and federal common law.

On October 13, 2020, Plaintiffs filed a Motion for Temporary Restraining Order ("TRO") to prevent Fulton County from using its CTCL grant money. Dkt. No. [3]. Fulton County has responded opposing Plaintiff's requested order. Dkt. No. [9]. The Court held a hearing at which the parties appeared on October 27, 2020.

## II.  LEGAL STANDARD

The standard for a temporary restraining order and preliminary injunction are identical. Windsor v. United States, 379 F. App'x 912, 916–17 (11th Cir. 2010). A preliminary injunction is "an extraordinary remedy" whose purpose is "to preserve the positions of the parties . . . until a trial on the merits may be held." Bloedorn v. Grube, 631 F.3d 1218, 1229 (11th Cir. 2011) (citing Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)); United States v. Jefferson Cty., 720 F.2d 1511, 1519 (11th Cir. 1983)); see also Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) ("In this Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites.")

(internal citations omitted). To win a preliminary injunction, Plaintiff must clearly establish the following: (1) a substantial likelihood of success on the merits, (2) irreparable injury to Plaintiff absent the relief sought, (3) that the threatened injury to Plaintiff outweighs the harm the relief would inflict on Defendant; and (4) that the injunction, if granted, would not be adverse to the public interest. See, e.g., Siebert v. Allen, 506 F.3d 1047, 1049 (11th Cir. 2007).

### III. DISCUSSION

Plaintiffs argue that they are entitled to a TRO because they have clearly established each of the four TRO elements on their claim. Dkt. No. [3-3] at 7.[2] Fulton County argues that Plaintiffs have failed to establish any of the four elements, both because they lack standing[3] and because their claim is otherwise baseless. Dkt. No. [9] at 3. For now, the Court addresses the merits of Plaintiffs' TRO request, keeping in mind that Plaintiffs must "clearly establish[] the burden of persuasion as to each of the four prerequisites." Siegel, 234 F.3d at 1176 (citations omitted).

---

[2] Plaintiffs' brief does not comply with the type and format rules in Local Rule 5.1(C). See LR 5.1(C), N.D. Ga.

[3] The Court is concerned that Plaintiffs lack standing, but that issue has not yet been fully briefed. Defendant Fulton County has filed a Motion to Dismiss in which it challenges Plaintiffs' standing. The Court will address the standing issues in the order resolving the Motion to Dismiss.

### A.     Substantial Likelihood of Success

Of the four factors required for temporary injunctive relief, likelihood of success on the merits is "generally the most important." Gonzalez v. Reno, No. 00-11424-D, 2000 WL 381901, at *1 (11th Cir. Apr. 19, 2000) (per curiam) (unpublished). "Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1226 (11th Cir. 2005) (citing Siegel, 234 F.3d at 1176). Plaintiffs argue that they are likely to succeed on the merits of their preemption claim. Dkt. No. [3-3] at 8. Fulton County disagrees; it argues that Plaintiffs' cited provisions provide no private cause of action and that, in any event, nothing in the provisions prohibits the county from accepting the grant money. Dkt. No. [9] at 9. The Court examines each of the legal bases for Plaintiffs' claims to determine whether any is substantially likely to succeed on the merits.

#### *1.     Supremacy Clause and Elections Clause*

Plaintiffs claim that the Supremacy and Elections Clauses prohibit Fulton County's acceptance of the CTCL grant. See Dkt. No. [1] ¶¶ 90–97. They reason that the Elections Clause vests the federal government and state governments with authority to determine the time, place, and manner of federal elections and that in accepting this grant, Fulton County would be usurping the role of Georgia and the United States. In Plaintiff's view, the Supremacy Clause would provide a private cause of action to remedy this imbalance. Dkt. No. [3-3] at 9.

6

The Court disagrees. Regarding the Supremacy Clause, the Supreme Court has unambiguously held that it provides no private right of action:

> [T]he Supremacy Clause is not the source of any federal rights, and certainly does not create a cause of action. It instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so.

Armstrong v. Exceptional Child Ctr., Inc., 575 U.S. 320, 324–25 (2015). Here, Plaintiffs have shown no "clash" between state and federal law requiring the application of the Supremacy Clause. Accordingly, the Supremacy Clause does not provide Plaintiffs with a private right of action.

Similarly, the Elections Clause does not, on its own, provide Plaintiffs with a basis to sue Fulton County. The Supreme Court has held that a suit alleging "that the law—specifically the Elections Clause—has not been followed" "is precisely the kind of undifferentiated, generalized grievance about the conduct of government" that the Supreme Court refuses to entertain. Lance v. Coffman, 549 U.S. 437, 442 (2007). "Any rights and corresponding remedies for Elections Clause violations must therefore arise from laws enacted by Congress pursuant to its authority under the Elections Clause." Texas Voters Alliance et al. v. Dallas County et al., No. 4:20-cv-0775-ALM (E.D. Tex. Oct. 20, 2020), ECF No. [28] at 23.

Even if the Elections Clause did provide a vehicle to sue, Plaintiffs are not likely to show that Fulton County's actions would violate the clause. The Elections Clause imposes upon States the duty "to prescribe the time, place, and manner of

7

electing Representatives and Senators" and upon Congress "the power to alter those regulations or supplant them altogether." Arizona v. Inter Tribal Council of Az., Inc., 570 U.S. 1, 8 (2013). "This grant of congressional power was the Framers' insurance against the possibility that a State would refuse to provide for the election of representatives to the Federal Congress." Id.

Fulton County's acceptance of private funds, standing alone, does not impede Georgia's duty to prescribe the time, place, and manner of elections, and Plaintiffs cite no authority to the contrary.[4] There is no support in this record for a finding that acceptance of private funds means that Georgia no longer retains its authority over "'notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns.'" Cook v. Gralike, 531 U.S. 510, 524 (2001) (quoting Smiley v. Holm, 285 U.S. 355, 366 (1932)). Georgia law leaves it to counties to fund election expenditures that exceed federal and state funds. By applying for and accepting the CTCL grant, Fulton County is merely exercising its prerogative of locating funding. Plaintiffs have not clearly shown that Fulton County's chosen source of funding undermines Georgia's power to set the time, place, and manner of elections.

---

[4] Plaintiffs argue that "the Georgia legislature has not approved any acceptance or use of private federal election grants . . . ." Dkt. No. [3-3] at 2. But Plaintiff has pointed to no legislative prohibition on the use of private grants, nor is Plaintiff likely to show that the legislature's silence amounts to a prohibition.

8

Accordingly, the Court finds that Plaintiff's claims of preemption predicated on the Supremacy Clause and the Elections Clause are not substantially likely to succeed on the merits.

### 2.  *HAVA*

The Court also agrees with Defendant that Plaintiffs have not met their burden on their HAVA claim. Dkt. No. [9] at 11. Simply put, "HAVA creates no private cause of action." See Bellito v. Snipes, 935 F.3d 1192, 1202 (11th Cir. 2019). "Where Congress has not created a private right of action, courts may not do so, 'no matter how desirable that might be as a policy matter, or how compatible with the statute.'" Id. (quoting Alexander v. Sandoval, 532 U.S. 275, 286 (2001)); see also Brunner v. Ohio Republican Party, 555 U.S. 5, 6 (2008) (per curiam) (holding private litigants were "not sufficiently likely to prevail on the question whether Congress has authorized the District Court to enforce § 303 [of HAVA] in an action brought by a private litigant to justify the issuance of a TRO"). The Court finds that Plaintiffs have not shown substantial likelihood of success on their claim that Fulton County's actions violate HAVA.

### 3.  *NVRA*

While Plaintiffs' Complaint contains some references to NVRA, Dkt. No. [1] ¶¶ 130–53, Plaintiffs have not raised their NVRA theory in their Motion for TRO. Thus, the Court finds that Plaintiffs have not clearly shown substantial likelihood of success on their NVRA claim.

9

### 4. *Common Law Theory*

Plaintiffs last argue that the grant money tortiously interferes with the "legal and contractual relationships between the federal government and the state." Dkt. No. [3-3] at 12. Plaintiffs argue that they are third-party beneficiaries of an implied social contract between the state and federal governments, such that they have a vested right in "fair, equal and uniform elections." Id. They then allege that acceptance of private money somehow violates this implied social contract. The Court declines to adopt this novel theory which Plaintiffs support with no applicable authorities or persuasive argument. Accordingly, the Court finds that Plaintiffs are not likely to succeed on the merits of this claim.[5]

### B. Irreparable Harm

Plaintiffs must also clearly establish that they will suffer irreparable harm absent their requested TRO. Doran v. Salem Inn, Inc., 422 U.S. 922, 931 (1975) ("The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury."). "[E]ven if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." Siegel, 234 F.3d at 1176 (citations

---

[5] In their Reply Brief, Plaintiffs invoke the Court's authority under the All Writs Act as potential vehicle to apply their common law theory. The Court will not address this argument made for the first time in reply. See Rindfleisch v. Gentiva Health Servs., Inc., 22 F. Supp. 3d 1295, 1301 (N.D. Ga. 2014) ("As a general rule, federal courts do not consider arguments that are presented for the first time in a reply brief.").

omitted). The asserted irreparable injury "'must be neither remote nor speculative, but actual and imminent.'" Id. (quoting Northeastern Fla. Chapter of the Ass'n of Gen Contractors v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990)).

Plaintiffs argue that they will suffer irreparable harm if Fulton County is not enjoined from accepting and using the grant money. Dkt. No. [3-3] at 22. Their claimed harm is that the grant will skew the outcome of the November 3, 2020 election against their preferred candidates. Id. Plaintiffs also note that, if the Court finds Defendant's conduct to be unconstitutional, that finding could invalidate the election and deprive Plaintiffs of representation in Congress. Id. at 12–13.

The Court finds that Plaintiffs' asserted injuries are speculative. Plaintiffs have not shown that the grant money paid to Fulton County will skew the outcome of the November 3, 2020 election. They acknowledge the many potential uses of the grant money, which range from providing poll workers PPE to protecting them from COVID-19 to educating voters on safe voting policies and procedures to hiring additional staff to process mailed ballots. Plaintiffs have failed to plead or argue that Fulton County will use the grant money in a way that will increase its voting numbers compared to other counties in Georgia. At the TRO hearing, counsel for Fulton County reported that the county expected to use the funds for signage, PPE supplies, cleaning voting locations, and meeting increased staff expenses. Counsel also emphasized that the funding would go to

all of Fulton County, not just those portions with heavy populations of progressive voters.

Likewise, Plaintiffs have failed to plead or argue that Fulton County was favored over ostensible Georgia counties that were conservative, deserved grant money, and did not receive it. Even when Plaintiffs argue that CTCL favors counties or cities with high numbers of progressive voters, they do so by citing the nationwide grant figures cross-referenced with 2016 presidential election results. See Dkt. No. [1] ¶ 57. But this chart does not show that conservative counties in Georgia were disfavored in a way that would skew the election results in Georgia, nor does it show projected voter trends in 2020.[6]

The Court also rejects Plaintiffs' irreparable harm theory that they might be deprived of a representative in Congress. This would require the Court to accept Plaintiffs' claims—an outcome that is not substantially likely—and still be willing to issue an order invalidating the November 3 election. This possibility is so speculative that it cannot sustain Plaintiffs' burden of clearly showing actual and imminent irreparable harm.

Accordingly, the Court finds that Plaintiffs have failed to show that they are substantially likely to face irreparable harm absent the relief requested.[7]

---

[6] This is all assuming that Plaintiffs have some legally cognizable interest in the outcome of the election—a topic the Court will address in further detail in the context of Fulton County's Motion to Dismiss.

[7] Because Plaintiffs have failed to show a substantial likelihood of success on the merits or irreparable harm, the Court declines to address the balance of

## IV. CONCLUSION

Based upon the foregoing, Plaintiffs Georgia Voter Alliance and John Wood's Motion for Temporary Restraining Order [3] is **DENIED**.

**IT IS SO ORDERED** this 28th day of October, 2020.

_____
**Leigh Martin May
United States District Judge**

---

hardships and public interest. See Siegel, 234 F.3d at 1176 (holding that a plaintiff must clearly establish each of the four TRO elements).